UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 25-CR-80002-AMC

UNITED STATES OF AMERICA

vs.

JONAS JANVIER,

    Defendant.
_____/

**UNITED STATES' RESPONSE IN OPPOSITON TO
THE DEFENDANT'S REQUEST FOR A DOWNWARD VARIANCE**

    The United States, through the undersigned Assistant United States Attorney, hereby responds to Defendant Jonas Janvier's Sentencing Memorandum (DE 32). While focused primarily on an analysis of the Section 3553(a) factors, the Sentencing Memorandum also asks the Court to impose a non-custodial sentence, which is well below the Sentencing Guidelines range of 27 to 33 months' imprisonment. *See* Sentencing Memo. at 14 (requesting the Court impose a non-custodial sentence with lengthy supervision to facilitate payment of restitution). Accordingly, the Court should construe the Sentencing Memorandum as a motion for downward variance. For the reasons discussed more fully below, the United States respectfully submits that a downward variance is not warranted, and that a sentence within the Defendant's advisory guideline range, is sufficient, but not greater than necessary, to accomplish the goals of sentencing.

**I.    BACKGROUND**

    On January 7, 2025, Defendant Jonas Janvier ("Janvier" or "Defendant") was charged by Information with one count of wire fraud, in violation of 18 U.S.C. § 1343. *See* Information (DE 1). On May 16, 2025, the Defendant pled guilty to the Information. *See* Minute Entry (DE 19).

1

The undisputed facts in this case established that the Defendant, on behalf of corporations he controlled, submitted two false and fraudulent applications seeking funds from the Economic Injury Disaster Loan ("EIDL") program and three false and fraudulent applications seeking funds from the Paycheck Protection Program ("PPP").[1] Ultimately, through this wire fraud scheme, the Defendant fraudulently obtained $896,472 from the Small Business Administration ("SBA").

The Court scheduled the Defendant's sentencing hearing for August 21, 2025. *See* Paperless Order (DE 31). The Presentence Investigation Report ("PSI") calculates the Defendant's guideline imprisonment range as 27 to 33 months.[2] *See* Final PSI ¶ 76 (DE 33).

## II.     ARGUMENT

The overarching objective of a sentencing court is to fashion a sentence that is sufficient, but not greater than necessary, to accomplish the goals of sentencing. *Kimbrough v. United States*, 552 U.S. 85, 101 (2007). Section 1B1.1 of the Sentencing Guidelines outlines the order which district courts are to proceed at a sentencing hearing. First, the district court calculates the applicable guideline range. *See* U.S.S.G. § 1B1.1(a). Second, the district court applies any applicable departures under Sections H and K of Chapter 5. *See* U.S.S.G. § 1B1.1(b). After the first two steps are complete, "the Court shall then consider the applicable factors in 18 U.S.C. § 3553(a) taken as a whole." U.S.S.G. § 1B1.1(c).

The Section 3553(a) factors are:

---

[1] "The findings of fact of the sentencing court may be based on…facts admitted by a defendant's plea of guilty, undisputed statements in the presentence report, or evidence presented at the sentencing hearing." *United States v. Gayle,* 406 F. App'x 352, 365 (11th Cir. 2010) (quoting *United States v. Saunders*, 318 F.3d 1257, 1271 n.22 (11th Cir. 2003) (internal quotations omitted)).

[2] If the Court declines to apply the enhancement for sophisticated means, the Defendant's guideline imprisonment range drops to 21 to 27 months.

    (1) the nature and circumstances of the offense and the history and characteristics of the defendant;

    (2) the need for the sentence imposed—

        (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

        (B) to afford adequate deterrence to criminal conduct;

        (C) to protect the public from further crimes of the defendant; and

        (D) to provide the defendant with needed educational or vocations training, medical care, or other correctional treatment in the most effective manner;

    (3) the kinds of sentences available;

    (4) the kinds of sentence and the sentencing range established in the Guidelines;

    (5) any pertinent policy statement by the Sentencing Commission;

    (6) the need to avoid unwarranted disparities among defendants with similar records who have been found guilty of similar conduct; and

    (7) the need to provide restitution to any victims.

18 U.S.C. § 3553(a)(1)-(7).

While a court must consider all the relevant factors, it "need only acknowledge that it considered [them], and need not discuss each of these factors in either the sentencing hearing or in the sentencing order." *United States v. Amedeo*, 487 F.3d 823, 833 (11th Cir. 2007). The Court may give greater weight to some factors than others. *See United States v. Shaw*, 560 F.3d 1230, 1238 (11th Cir. 2009). "[T]he Guidelines are not only the starting point for most federal sentencing proceedings but also the lodestar. The Guidelines inform and instruct the district court's determination of an appropriate sentence. In the usual case, then, the systemic function of the selected Guidelines range will affect the sentence." *Molina-Martinez v. United States*, 136 S. Ct. 1338, 1346 (2016).

Here, the Defendant asks the Court for a very significant downward variance from the Sentencing Guidelines by imposing "a non-custodial sentence accompanied by robust supervision." Sentencing Memo. at 11; *see also id.* at 13 ("The defense proposes that the Court impose an extensive period of supervision with mandatory restitution on a strict and cumbersome repayment plan as proposed herein, with GPS monitoring to ensure compliance."). However, a closer look at the most relevant Section 3553(a) factors shows that a downward variance is not appropriate in this case.

> i. *The nature and circumstances of the offense and the history and characteristics of the defendant – 18 U.S.C. § 3553(a)(1)*

As the Defendant acknowledges, "the offense is serious." Sentencing Memo. at 8. The Defendant took advantage of Government programs that were intended to help eligible small business owners and entrepreneurs adversely affected by the COVID-19 pandemic. Due to the Defendant's submission of five different false and fraudulent applications, the Defendant received almost $900,000 in funds. Because of the fraud committed by the Defendant and others,[3] some legitimate business owners who were negatively impacted by the pandemic were unable to obtain relief funds. The business owners then suffered the loss of their livelihood, as well as their employees' livelihood.

The Defendant argues there are several reasons that he deserves a non-custodial sentence (well below the advisory guideline range of 27 to 33 months). First, he notes that, after being

---

[3] In a June 2023 white paper, the Office of Inspector General for the SBA estimated that the SBA disbursed over $200 billion in potentially fraudulent COVID-19 EIDLs, EIDL Targeted Advances, Supplemental Targeted Advances, and PPP loans. *See* COVID-19 Pandemic EIDL and PPP Loan Fraud Landscape, Small Business Administration Office of Inspector General (June 27, 2023), *available at* https://www.oversight.gov/sites/default/files/documents/reports/2023-06/SBA-OIG-Report-23-09.pdf (last accessed on August 16, 2025).

4

approached by federal agents in October 2024, he immediately admitted he had filed false and fraudulent applications that included some fabricated supporting documents. *See* Sentencing Memo. at 1. While the Government commends the Defendant for accepting responsibility in October 2024, it bears mention that the Defendant received the fraudulent PPP and EIDL funds in 2020 and 2021 and did not reach out to the SBA or attempt to return any of the fraudulently-obtained loan funds. He admitted wrongdoing only after being caught over three years later.

Furthermore, he likely knew when agents arrived at his door that the jig was up, because another individual whom he had helped to obtain a PPP loan already had been prosecuted by the Government. In June 2023, Anitho Rene ("Rene") was charged with wire fraud in the Southern District of Florida for his role in obtaining false and fraudulent PPP loans for himself and others. *See United States v. Anitho Rene, et al.*, Indictment (DE 1), Case No. 23-CR-80104-Smith (S.D. Fla. 2023). Rene pled guilty in August 2023 and cooperated with the Government. *See United States v. Anitho Rene, et al.*, Plea Agreement (DE 32), Case No. 23-CR-80104-Smith (S.D. Fla. 2023) (containing language about Rene's agreement to cooperate fully with the Government). Rene's Factual Proffer notes, "From another individual, Rene learned how to prepare and submit applications for PPP loans." *United States v. Anitho Rene, et al.*, Factual Proffer (DE 32), Case No. 23-CR-80104-Smith (S.D. Fla. 2023). This other individual was the Defendant.

Additionally, the Defendant contends that it is important for the Court to consider that he "did not spend the money on a lavish lifestyle, such as luxury goods. A significant amount of the funds did go to payroll and business expenses, but in an unapproved and unlawful manner. Certain funds did go to non-business-related expenses…." Sentencing Memo. at 8-9. The Government disagrees with this characterization of where the fraudulently-obtained funds were spent. As the Defendant himself admitted in the Factual Proffer, "Janvier spent these loan

5

proceeds for his own personal use and benefit, not for payroll or other approved expenses." Factual Proffer at 4-5 (DE 20); *see also id.* at 5-6 ("Janvier spent much of the loan proceeds for his own personal use and benefit, not for payroll costs, interests on mortgage, rent or utilities."). For example, he used funds to purchase a property in Fort Pierce, to pay off personal credit cards and for other non-business-related expenses. Furthermore, the vast majority of the "payroll and business expenses" that were made with the EIDL or PPP funds were not expenses for the companies that actually received those EIDL and PPP loans, but for a new company that the Defendant created in November 2020 – Majestic Aesthetics, LLC.[4]

Lastly, the Defendant states that he faced an unrelenting pressure to provide, given his background growing up in Haiti with scarce resources and his later responsibility for family members who relied upon him. *See* Sentencing Memo. at 8. He argues, "[T]his context helps explain certain decisions." *Id*. However, "a major downward variance to a sentence of probation cannot be justified by the fact that [the defendant] was tempted by financial need and was given an opportunity to commit the crime." *United States v. Howard*, 28 F.4th 180, 215 (11th Cir. 2022).

By fraudulently obtaining funds that should have gone to legitimate business owners suffering negative effects from the COVID-19 pandemic, the Defendant committed a serious offense. This factor does not support a downward variance.

> ii. *The need for a sentence to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense – 18 U.S.C. § 3553(a)(2)(A)*

The seriousness of the offense has been discussed above. *See* Section II.i, *supra* p. 4-6.

---

[4] Majestic Aesthetics, LLC was ineligible for EIDL or PPP loans because it was created after the start of the pandemic.

In light of that seriousness, a non-custodial sentence is not appropriate. Instead, the Court should impose a sentence that includes a term of imprisonment, supervised release, forfeiture and restitution to truly reflect the seriousness of the offense, promote respect for the law, and provide just punishment for the offense.

      *iii.*    *The need to afford adequate deterrence to criminal conduct – 18 U.S.C. § 3553(a)(2)(B)*

The Defendant states that he is unlikely to recidivate, given his strong family and community ties and some positive changes he has made in his professional ventures. *See* Sentencing Memo. at 13. Additionally, the Defendant immediately accepted responsibility for his actions after he was approached by federal agents. However, even if this experience and its consequences reduces the risk of recidivism by this defendant, the Government does not agree that a non-custodial sentence provides adequate deterrence to criminal conduct by others. Because potential offenders may consider the chance of ever being caught to be very low, if they see that someone caught defrauding the Federal government is not being imprisoned, but rather is only receiving probation and being ordered to pay the money back, it will send the wrong message to those individuals who might be tempted to abuse government relief programs or otherwise commit fraud. *See Howard*, 28 F.4th at 209 (noting that an overly lenient sentence sends a message "that would-be white-collar criminals stand to lose little more than a portion of their ill-gotten gains and practically none of their liberty"). While the Paycheck Protection Program has ended, there are many other government programs susceptible to fraud. As Judge Ed Carnes put it, "Like bears to honey, white collar criminals are drawn to billion-dollar government programs." *Id.* at 186.

Indeed, general deterrence is one of the key purposes of sentencing. *See id.* at 209 (quoting *United States v. McQueen*, 727 F.3d 1144, 1158 (11th Cir. 2013)). General deterrence

is particularly important in white collar crime cases. "Because economic and fraud-based crimes are more rational, cool and calculated than sudden crimes of passion or opportunity, these crimes are prime candidates for general deterrence." *United States v. Kuhlman,* 711 F.3d 1321, 1329 (11th Cir. 2013) (quoting *United States v. Martin*, 455 F.3d 1227, 1240 (11th Cir. 2006)). The Defendant's request for a non-custodial sentence fails on this factor alone. As the Eleventh Circuit has explained in multiple cases: "The threat of spending time on probation simply does not, and cannot, provide the same level of deterrence as can the threat of incarceration in a federal penitentiary for a meaningful period of time." *Howard,* 28 F.4th at 209 (quoting *Kuhlman*, 711 F.3d at 1328).

> iv.   *The need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct – 18 U.S.C. § 3553(a)(6)*

Parity in sentencing among similarly-situated federal defendants across the country is fundamental to the proper administration of justice. This principle is embodied in Section 3553(a)(6), which "is concerned with national disparities among the many defendants with similar backgrounds convicted of similar criminal conduct." *United States v. Simmons*, 501 F.3d 620, 623 (6th Cir. 2007). Generally, "national uniformity is . . . taken into account by the Sentencing Guidelines, which are almost certainly the best indication of ordinary practice since most sentences are within the guidelines." *Id.* at 626 (internal marks and citation omitted). Indeed, as the Supreme Court has noted, "[e]ven after *Booker* rendered the Sentencing Guidelines advisory, district courts have in the vast majority of cases imposed either within-Guidelines sentences or sentences that depart downward from the Guidelines on the Government's motion." *Hughes v. United States*, 138 S. Ct. 1765, 1777 (2018) (internal marks and citation omitted). Here, a sentence within the Guidelines adequately promotes national uniformity.

      v.      *The need to provide restitution to the victim – 18 U.S.C. § 3553(a)(7)*

Here, the Defendant relies heavily on his argument that a non-custodial sentence will allow him to pay restitution "as quickly and fully as possible" and asks for a lengthy period of supervision. Sentencing Memo. at 13. The Defendant also proposes a specific restitution plan: the payment of a lump sum from the sale of part of his communications business (potentially $100,000), followed by a minimum $5,000 per month payment, or 70% of his monthly income, whichever is higher, until the loss is repaid in full. *Id*. at 2. However, under the law, the maximum amount of supervision that the Court can impose is three years. *See* 18 U.S.C. § 3583(b)(2). Thus, the payment of a lump sum of $100,000, plus $5,000 per month during the maximum term of supervision,[5] totals only $280,000, well below the $986,006.08 owed to the victim in this case.

The Government also is not persuaded by the general argument that the Defendant deserves a non-custodial sentence because "restitution maximization is paramount." Sentencing Memo. at 32. The need to provide restitution to the victim is one factor in the Court's consideration of an appropriate sentence, and this factor is satisfied by the Court's including restitution as part of the Defendant's sentence.

**III.   CONCLUSION**

For the foregoing reasons, the United States respectfully requests that the Court deny Defendant's request for a downward variance.

                                                  Respectfully submitted,

                                                  JASON A. REDING QUIÑONES
                                                  UNITED STATES ATTORNEY

---

[5] The payment of $5,000 per month for 36 months totals $180,000.

|       |                                     |
|-------|-------------------------------------|
| By:   | */s/ Shannon K. Shaw*               |
|       | Shannon K. Shaw                     |
|       | Assistant United States Attorney    |
|       | Florida Bar No. 92806               |
|       | U.S. Attorney's Office              |
|       | 500 S. Australian Ave.              |
|       | West Palm Beach, FL 33401           |
|       | Telephone: (561) 209-1036           |
|       | E-mail: Shannon.Shaw@usdoj.gov      |

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that on August 16, 2025, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF.

*/s/ Shannon K. Shaw*
Shannon K. Shaw
Assistant United States Attorney